UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JENNIFER BARTHOLOMEW,

                                    Plaintiff,

            -against-

WALMART INC. and WAL-MART STORES
EAST, LP,

                                    Defendant(s).

**MEMORANDUM & ORDER**
**2:24-cv-05578-ST**

**TISCIONE, United States Magistrate Judge:**

On February 2, 2024, Jennifer Bartholomew ("Plaintiff") slipped and fell on a puddle of water while shopping in Walmart. Plaintiff sued alleging negligence. Walmart moves for summary judgment. For the reasons set forth below, the motion is DENIED.

## PROCEDURAL HISTORY

On March 21, 2024, Plaintiff filed suit in the Nassau County Supreme Court. *See* Compl., ECF No. 1-1. On August 9, 2024, Walmart removed the case to Federal Court. *See* Notice of Removal, ECF No. 1. The Parties consented to my jurisdiction on March 28, 2025. *See* ECF No. 19. Fact discovery concluded on July 23, 2025. *See* July 23, 2025 Minute Entry. On January 29, 2026, Walmart moved for summary judgment. *See* Motion for Summary Judgment, ECF No. 25.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). But not every dispute is genuine and not every fact is material. "A fact is material . . . if it might affect the outcome of the suit under the governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001).

-1-

The moving party has the burden of meeting this standard. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

Pertinent here, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 416 (1996). Unlike New York law—and contrary to Plaintiff's contention—summary judgment in Federal Court is appropriate when "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Kirbaran v. Target Corp.*, 2025 WL 973050, at *1 (2d Cir. Apr. 1, 2025) (citing *id.*). That is, Walmart can win summary judgment by pointing to gaps in the record. *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 116 (2d Cir. 2017).

But "[s]ummary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Hudson v. Universal Pictures Corp.*, 2004 WL 1205762, at *1 (E.D.N.Y. Apr. 29, 2004), *affirmed*, 128 F. App'x 178 (2d Cir. 2005). Indeed, "if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997) (internal citation and quotations omitted) (cleaned up).

The issue before this Court is whether there is a sufficient record to establish a triable issue of fact as to the creation of the dangerous condition that injured Plaintiff. There is.

-2-

## DISCUSSION

On February 2, 2024, Plaintiff was shopping at Walmart in Uniondale. *See* Plaintiff's Deposition (Pl.'s Dep.) ECF No. 25-4, 10:11 – 16. She slipped on a puddle of water injuring her right knee and lower back. *Id*. Plaintiff sued, alleging negligence.

To establish negligence, the plaintiff must show that the defendant had a duty, the defendant breached its duty, and the plaintiff was injured as a result of the breach. *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985).

Here, there is no debate Walmart owed Plaintiff—a customer—a duty of care to maintain a reasonably safe premises. *See Alfaro v. Walmart Stores, Inc.*, 210 F.3d 111, 115 (2d Cir. 2000). Nor is there any contention Plaintiff was injured. Indeed, Plaintiff suffered torn ligaments, requiring surgery and rehab. Pl.'s Dep. 60:16 – 69:8. The only question is whether Walmart breached its duty.

To establish breach of duty in slip-and-fall cases, the defendant must have either created the dangerous condition or had notice of the condition. *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 401 (E.D.N.Y. 2010). Notice of the condition can be actual or constructive. *See Levine v. Amverserve Ass'n, Inc.*, 92 A.D.3d 728, 729 (2d Dep't 2012).

"Actual notice requires the plaintiff to prove that the defendants were, in fact, aware of the dangerous condition." *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 332 (E.D.N.Y. 1998). Here, however, there is no evidence Walmart had *actual* notice of the puddle. To be sure, Walmart employees testified they were not aware of the puddle until they responded to the incident. *See* James Deposition, ("James Dep."), ECF No. 25-6, 34:17 – 19; Harris Deposition ("Harris Dep."), ECF No. 25-7, 33:20 – 34:10.

To establish constructive notice, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Nat. Hist.*, 67 N.Y.2d 836, 837 (1986). But here, again, there is no evidence indicating how long the puddle existed prior to the incident. Indeed, there is no video evidence of the puddle nor are there witnesses who observed the puddle prior to Plaintiff's fall.

While Plaintiff blankly alleges Walmart had notice of the condition, she fails to cite a portion of the record supporting the statement. *See* Pl.'s Response to Interrogatories, ECF No. 25-8, ¶¶ 6 – 8; Pl.'s Memorandum of Law ECF No. 26-8, p. 5. Indeed, Plaintiff did not observe the spill, and neither knows what caused the spill nor how long it was present. Pl.'s Dep. 18:14 – 17; 24:1 – 8; 26:13 – 24. As such, Plaintiff's notice claims are unsupported legal conclusions, and "[s]peculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd.*, 696 F. Supp. 897, 900 (S.D.N.Y. 1988).

There are, however, portions of the record indicating Walmart employees created the dangerous condition.

First, it rained on the day of the incident. Pl.'s Dep. 20:6 – 13. Second, Walmart testified that its employees return carts to the indoor cart corral. James Dep. 16:13 – 15. Third, Plaintiff fell ten steps from the cart corral. Pl.'s Dep. 44:15 – 18. Fourth, Plaintiff and Walmart employees observed a puddle where Plaintiff fell. Pl.'s Dep. 24:1 – 8; James Dep. 34:13 – 16. It follows that the puddle was—possibly—created by wet carts being brought inside by Walmart employees.

Whether Walmart created the puddle is a triable issue of fact. The way this factual dispute accumulated in the record is, in a word, puzzling.

The Customer Incident Report states Plaintiff fell "from some water due to the carts being wet from the rain." *See* Customer Incident Report. But as revealed through deposition, Plaintiff did not fill out the Customer Incident Report. Pl.'s Dep. 45:19 – 46:12. Instead, it was filled out by Walmart management. James Dep. 35:10 – 15; Harris Dep. 45:12 – 14; 46:8 – 11. Further, Juliana Harris—the front end supervisor—believes Plaintiff had "slipped on some water from the carts." *Id*. 33:25 – 34:2. As such, Walmart employees readily acknowledge—if not outright admit—the puddle could have been created from rainwater dripping from the shopping carts brought in by Walmart employees.

Confounding the issue, Plaintiff seemingly argued against this theory. The following exchange from Plaintiff's deposition is equal parts illustrative and confusing:

> Q. I'm specifically asking what makes you believe it was the rain dripping from the carts that caused your accident?
>
> A. When did I state that it was from the carts?
>
> Q. Well, that's what I was asking earlier. You seem to believe that it was the water or rain from the carts that caused you to slip and fall. Do I have it wrong?
>
> A. Yes. I meant it was probably from the rain. I never mentioned any carts.

Pl.'s Dep. 45:4 – 15.

When asked about the Customer Incident Report, Plaintiff stated "I never stated I was getting a cart, so I don't know where they're getting the carts from." *Id*. 45:23 – 25. Defense Counsel again asked Plaintiff whether she believed the puddle was created from water dripping from the carts, and Plaintiff responded—quite emphatically—"No." *Id*. 46:23. Nevertheless, Plaintiff's signature is on the bottom of the report. *Id*. 49:12 – 14. But when asked if she read the report, Plaintiff stated she "just signed." *Id*. 42:15.

Plaintiff's objection to Defense Counsel's characterization is both damaging to her position and inconsistent with her theory of the case. Nevertheless, there is a factual dispute as to the

creation of the puddle.  Indeed, since the puddle was close to the cart corral on a day on which both parties agree there was rain, the most likely explanation for its creation is that wet carts were brought from outside to the cart corral and water dripped from the wet carts to the floor.  It is equally likely that it was a Walmart employee who brought the wet carts from outside to the cart corral since that is a typical part of their job and Walmart customers do not usually return used carts to the corral rather than leave them outside in the parking lot.  Given the strong circumstantial evidence, there is a plausible inference, probably the most likely inference, that Walmart employees created the dangerous condition that caused Plaintiff's fall.

Walmart's inclement weather policy further illuminates the possibility of its negligence. Walmart's rainy-day policy requires employees to deploy rain mats and fans near entrances. *See* Inclement Weather Policy, ECF No. 26-4; Harris Dep. 52:15 – 18. But Harris does not recall deploying mats or fans on the day of the incident. Harris Dep. 53:7 – 11. Walmart also requires front end supervisors to monitor floors for the presence of water. *Id.* 51:17 – 20; Inclement Weather Policy. But again, Harris does not recall conducting safety sweeps on the day of the incident. Harris Dep. 52:3 – 6. In sum, Walmart's failure to implement its own rainy-day policy to combat dangerous conditions supports a finding of Walmart's negligence, particularly in light of the strong probability that a Walmart employee created the hazard in the first place.

a. Res Ipsa Loquitur

Further contributing to the possibility of liability is *res ipsa loquitur*.

*Res ipsa loquitur* "enables a jury presented only with circumstantial evidence to infer negligence simply from the fact that an event happened." *St. Paul Fire & Marine Ins. Co. v. City of New York*, 907 F.2d 299, 302 (2d Cir. 1990). Before a *res ipsa loquitur* charge is presented, it must be established: "(1) the event was of a kind which ordinarily does not occur in the absence

of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of the plaintiff." *Id*.

True, *res ipsa loquitur* is typically inapplicable to slip-and-fall cases "given the possibility that plaintiff's fall was caused by her own misstep." *Anderson v. Skidmore Coll.*, 94 A.D.3d 1203, 1205 (3d Dep't 2012); *see also Meech v. Anthony*, 179 A.D.3d 1555, 1557 (4th Dep't 2020). But the Second Circuit has made exceptions. In *Coale v. Metro-North Commuter Railroad Co.* the plaintiff slipped on an unknown oily substance in the Metro-North employee register room. 621 F. App'x 13, 15 (2d Cir. 2015). There was no evidence Metro-North had notice of the spill, nor was there evidence a Metro-North employee created the condition. Nevertheless, the Second Circuit found summary judgment improper, and permitted a *res ipsa loquitur* charge to advance to the jury where there was "no apparent explanation for the presence of that substance except someone's negligence." *Id*. This was due to Metro-North's failure to proffer a "non-negligent explanation." *Id*.

Here too, Walmart fails to offer a non-negligent explanation for the puddle. Several Walmart employees testified Plaintiff fell from a puddle created by wet shopping carts being brought into the store. Additionally, no Walmart employees recall implementing mandatory rainy-day policy, including merely monitoring for wet floors. Such may support a *res ipsa loquitur* jury charge. To be clear, we do not conclude *res ipsa loquitur* is applicable here, as such would require additional pre-trial briefing. But there is an argument where a defendant's employees posit as to their own negligence and fail to implement remedial measures, such an inference may be appropriate.

## **CONCLUSION**

For the foregoing reasons, Defendants' summary judgment motion is DENIED.

**SO ORDERED.**

/s/

_____

Steven Tiscione

United States Magistrate Judge

Eastern District of New York

Dated: Central Islip, New York

August 4, 2026